*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ARMSTRONG, Minors.

UNPUBLISHED
September 21, 2023

No. 364282
Kent Circuit Court
Family Division
LC No. 21-050869-NA;
　　　　 21-050870-NA

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Respondent has four biological children, and her parental rights were terminated to two of those children before the commencement of this case. In this case, the Department of Health and Human Services petitioned the trial court to remove respondent's son and daughter from respondent's care because it was reported that respondent had neglected and physically abused her son. The trial court terminated respondent's parental rights to the children in this case. We affirm.

## I. BACKGROUND

Law enforcement was contacted when respondent's 11-year-old son ran away from home. He was found five miles away, and he disclosed during a forensic interview that respondent had hit him with a belt multiple times and threatened to kill him. Respondent's neighbors also reported that they saw the son sleeping in the hallway of their apartment building, and respondent had stated that she knew that she had locked her son out of the apartment because she wanted to make her son feel "hungry," "scared," and "lonely." Respondent was arrested for child abuse, and her parenting time with her son was suspended in this case because there was a no-contact order between them in the criminal proceeding. Nevertheless, respondent attempted to contact her son several times in violation of that court order, and it was reported that respondent may have attempted to pressure her son to say that he fabricated the allegations of abuse.

The children were placed with respondent's mother until respondent had an altercation with her mother. After which the children were placed in separate placements, and one of the son's foster fathers made inappropriate statements regarding respondent's conduct. Petitioner reported that this foster home's license was removed, and the son was transferred to a new placement.

Petitioner referred respondent to parenting classes and counseling sessions that respondent completed, but petitioner's caseworker reported that respondent failed to benefit from those services because she did not take responsibility for the children coming into petitioner's care and she could not articulate how she would discipline her son differently if he was returned to her care.

Additionally, respondent only attended four of the nine offered parenting-time visits with her son once parenting time was reinstated, and she did not properly interact with or discipline her son during those visits. It was reported that respondent was also not able to discipline her daughter appropriately during parenting-time visits, and respondent would often acquiesce to her daughter's demands for sugary food instead of redirecting her daughter's negative behavior.

During the pendency of the case, the son underwent a trauma assessment that recommended joint family therapy with respondent if the son's treatment team agreed. The son's therapist, however, did not find that it would be appropriate for him to have contact with respondent. Even though petitioner referred respondent and her son to joint therapy, the son refused to attend or participate with respondent.

Petitioner recommended the termination of respondent's parental rights to both children, and the trial court set a date for the termination hearing. Personal service of the notice for the termination hearing was not able to be performed because respondent was not living at her last stated address. Instead, the trial court ordered notice by publication 21-days before the termination hearing. On the evening before the hearing, respondent took her daughter with her after her parenting-time visit in an attempt to abscond. Respondent did not attend her termination hearing, and it was unknown at the time where she had taken her daughter.

Twelve months after the initial dispositional order, the trial court terminated respondent's parental rights to the children under MCL 712A.19b(3)(b)(*i*), (3)(c)(*i*), (3)(g), and (3)(j). The trial court found that petitioner had made reasonable efforts to reunify respondent with the children, even when the son was unwilling to participate, because petitioner made consistent efforts to find therapists and services that would work with respondent and the children.

After finding that respondent failed to show that she had benefited from the services that were provided to her, the trial court considered the best interests of the children. The trial court found that the son did not have a bond with respondent given that he refused to participate in services with her, and the inappropriate comments from one of the son's foster fathers did not impact the son's willingness to see respondent because the son had refused to participate with respondent when he was originally placed with his maternal grandmother. Additionally, even though the daughter did have a bond with respondent, the trial court held that the bond might not be healthy given that respondent engaged in inappropriate parenting with her daughter.

The trial court also considered that the children were in preadoptive placements that were attending to the children's needs, and the placements presented stability and permanency that guardianship could not provide. Further, the trial court observed that the termination of respondent's parental rights would begin the process of grieving, break the trauma bond that they had with respondent, and allow the children to develop in a healthy manner.

Respondent now appeals.

## II. ANALYSIS

### A. NOTICE

Respondent first argues that she was not given notice that the termination proceeding would involve her parental rights to her daughter. Respondent did not raise this argument in the trial court, and this issue is unpreserved for appellate review. *In re Killich*, 319 Mich App 331, 336; 900 NW2d 692 (2017). Out of an abundance of caution for an issue concerning a child's welfare, however, we will address this issue as preserved. "Whether a court has personal jurisdiction over a party is a question of law, which this Court reviews do novo." *In re Terry*, 240 Mich App 14, 20; 610 NW2d 563 (2000).

"A failure to provide notice of a termination proceeding hearing by personal service as required by statute . . . is a jurisdictional defect that renders all proceedings in the family court void." *Id.* at 21. MCR 3.920(B)(4)(a), however, allows the trial court to enter an ex parte order to provide notice through publication. If service is by publication, then the notice must be published at least 21 days before a hearing that seeks to terminate parental rights. MCR 3.920.

The record indicates that even though respondent was not provided with personal service for the termination hearing because she was no longer living at her last stated address, the trial court issued an ex parte order that allowed for alternative service through publication. The publication included both children's names and was published more than 21-days before the hearing. As a result, there is no issue concerning notice in this case, and the trial court had jurisdiction to issue the order terminating respondent's parental rights. See *In re Terry*, 240 Mich App 20.

### B. REASONABLE EFFORTS

Respondent next argues that petitioner did not make reasonable efforts to reunify her with her son. Generally, this Court reviews for clear error a trial court's finding that "reasonable efforts were made to preserve and reunify the family." *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (cleaned up). "While the [Department of Health and Human Services] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent specifically argues that petitioner failed to implement joint family therapy with her son, and petitioner failed to monitor her son adequately while he was in foster care, which resulted in inappropriate comments that caused the son not to want to visit respondent. Respondent ignores, however, that joint family therapy was only recommended so long as the son's treatment team agreed that the son would benefit from that therapy. The son's therapist did not find that it would be appropriate for him to have contact with respondent. Nevertheless, petitioner was able to find services that would provide joint family therapy, but the son refused to attend. Additionally, as the trial court noted, the son had refused to participate with respondent before he was placed in

foster care while he was still living with his maternal grandmother. Respondent's argument, that the foster father's comments caused the son to refuse to participate, is without merit. Further, petitioner removed the son from that foster home and removed that foster home's license.

Given the petitioner's attempts to facilitate family therapy, and the son's refusal to participate, the trial court did not clearly err by concluding that the agency made reasonable efforts to reunify respondent with her son on this issue. See *In re Fried*, 266 Mich App at 542-543.

## C. STATUTORY BASIS

Respondent argues that the trial court erred when it found statutory grounds to terminate her parental rights. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Rood*, 483 Mich at 91 (cleaned up).

MCL 712A.19b(3)(c)(*i*) provides as follows:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

MCL 712A.19b(3)(c)(*i*) is appropriate "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App at 710 (cleaned up).

In this case, there were more than 182 days between the initial dispositional order and the termination hearing. Therefore, the 182-day statutory period was satisfied.

The children were brought into petitioner's care as a result of allegations that respondent had physically abused her son. Respondent participated in parenting classes and therapy, but petitioner reported that respondent did not show any meaningful benefit from those services because she failed to take responsibility for the children coming into petitioner's care. Further, respondent could not explain how she would discipline her son differently than she had before if her son was returned to her care, and she did not properly discipline her son during the four parenting-time visits with her son. Respondent also attempted to contact her son several times in violation of the trial court's order, and she also absconded with her daughter on the evening before the termination hearing.

-4-

Given respondent's conduct during the pendency of this case, we are not left with a definite and firm conviction that a mistake as been made. See *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "[T]he totality of evidence amply" supports that respondent "had not accomplished any meaningful change" in the conditions that led to adjudication because she did not display any improvement in her ability to discipline her son appropriately, and she absconded with her daughter in an attempt to circumvent the trial court's hearing. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Therefore, the record supports that the trial court did not clearly err when it found by clear and convincing evidence that respondent's conditions continued to exist.

Because one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

## D. BEST INTERESTS

Lastly, respondent argues that the trial court erred by finding that the termination of her parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App at 33.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. With respect to the children's best interests, this Court places its focus on the children rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, the trial court acknowledged that respondent had a strong bond with her daughter, but it found that the bond may have been unhealthy given that respondent often failed to set appropriate limits with her daughter or use appropriate disciplinary methods. This included respondent acquiescing to her daughter's demands when the latter exhibited negative behaviors. The trial court also considered that the termination of respondent's parental rights would allow the children to develop in a healthy manner, absent respondent's conduct. Respondent argues that the termination would cause her son additional trauma. Her son continued, however, to refuse to see her or participate in services with her, indicating his preference in support of the termination of respondent's parental rights. Further, the trial court found that respondent did not have a bond with her son.

The trial court also heard testimony that the children's needs were being met in their placements, and that adoption was in the best interest of the children because it would provide the children with permanency, stability, and the ability to heal.

Given that the children were doing well in their preadoptive homes, respondent did not demonstrate improvement in her ability to parent the children, and respondent attempted to abscond with her daughter, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. Therefore, the record supports that the trial court did not clearly err when it found by a preponderance of evidence that termination and adoption was in the children's best interests.

## III. CONCLUSION

Petitioner provided adequate notice of the termination proceeding as well as reasonable efforts for the reunification between respondent and her children. The trial court did not err when it found clear and convincing evidence that a statutory basis existed to terminate respondent's parental rights because respondent did not rectify her barriers to reunification, and, similarly, a preponderance of the evidence supports the trial court's finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney